IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOE BENOIT MARTIN, #208789, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-CV-884-MEF |
| | ) | [WO] |
| | ) | |
| ARNOLD HOLT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Joe Benoit Martin ["Martin"], a former state inmate, in which he presents claims against Arnold Holt, the warden of Kilby Correctional Facility ["Kilby"] at the time he filed this complaint, correctional officers Leon Bolling and Leonardo Moore, chief steward of food services Michael A. Warren and food services steward Leon Varner. Specifically, Martin contends that from May 11, 2007 until September 24, 2007 the defendants violated various administrative rules and regulations, subjected him to cruel and unusual punishment and acted with deliberate indifference to his health by requiring that he perform work inconsistent with his medical conditions.[1]   Martin also complains defendant Moore

---

[1]Martin suffers from chronic bronchitis and hyperlipidemia with resulting leg pain. Hyperlipidemia is the presence of elevated or abnormal lipids (fats) in the blood and usually manifests in persons who have high cholesterol and high triglyceride levels. In many cases, hyperlipidemia accelerates hardening of the arteries thereby causing intermittent lower leg pain.

threatened him with bodily harm.  Martin seeks declaratory, injunctive and monetary relief for the alleged violations of his constitutional rights.

The defendants filed special reports and supporting evidentiary materials addressing Martin's claims for relief.  Pursuant to the orders entered herein, the court deems it appropriate to treat the defendants' written reports as a motion for summary judgment. *Order of January 8, 2008 - Court Doc. No. 13*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

*Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Martin is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (the plaintiff's "conclusory assertions ..., in the

absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will

5

preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906

6

F.2d 667, 670 (11ᵗʰ Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Martin fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Eleventh Amendment Immunity

With respect to any claims Martin lodges against the defendants in their official capacities, they are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11ᵗʰ Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11ᵗʰ Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, each of the defendants is entitled to absolute immunity from those claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

**B.  Claims Lodged Against the Defendants in Their Individual Capacities**

Martin complains the defendants required him to work in the kitchen at Kilby and ignored his "no prolonged standing" medical profiles in violation of both administrative rules/regulations and his constitutional rights.[3] The defendants adamantly deny these allegations. Specifically, the defendants maintain that Martin's medical profiles did not prohibit him from assignment to the kitchen and further argue that they acted in compliance with the directives of the medical profiles.

Defendant Warren addresses Martin's claims as follows:

> Each inmate is given a job description before they start to work in the kitchen. I made it a Food Service Division policy to ask each inmate if they have any medical reason that they cannot perform the job task given to them. On or about May 10, 2007, I (Chief Steward Michael Warren) met with ...

---

[3]The medical profiles at issue merely limited Martin's periods of prolonged standing to intervals of twenty minutes. The profiles did not, however, contain any work restrictions barring Martin from assignment to the kitchen or limiting his assigned duties.

Inmate Joe Benoit Martin....  Inmate Martin produced a medical pink slip stating that "no prolong standing over 20 minutes".  I assigned Inmate Joe Benoit Martin ... to the serving line.  His job description was to serve bread on the end of the serving line.

My reason for assigning Inmate Martin to serve bread was because this was the coolest part of the kitchen.  In this area a wall fan was installed so the inmates with problems breathing or could not stand extreme heat would be much cooler there.  On several occasions I would open the door to my office (which is air conditioned) to allow Inmate Joe Benoit Martin to receive cooler air while he is working on the serving line.  Inmate Martin was also allowed to sit on a stool and serve bread.

During my inspection of the meal and monitoring the work of each inmate Inmate Joe Benoit Martin requested to speak to me.  I instructed him to see me after the meal and his sanitation duties had been completed.  I briefed all Kitchen Supervisors about Inmate Joe Benoit Martin's medical condition (No prolong standing over 20 minutes at a time).  After the feeding had been completed and the kitchen areas were cleaned and inspected by the Kitchen Steward on duty, Inmate Joe Benoit Martin knocked on my office door and requested to talk with me.

Inmate Joe Benoit Martin thanked me for allowing him to sit down but [alleged] the other Food Service Stewards were not allowing him to do so.  I told Inmate Martin that I would check with each Steward and get back with him.  Inmate Joe Benoit Martin stated that it was still too hot where he was serving.  I (Chief Steward Michael Warren) gave Inmate Martin a new job assignment to wipe tables in the dining room where ceiling fans and window vent units had been installed.  I explained to him that when he felt tired to sit down at will and if he got too hot to go outside through the kitchen exit doors and cool off.

Before the end of my shift I made it a point to check with Inmate Martin to see if he had any problems.  Inmate Martin stated that he loved his new job duties and thanked me for the job.  At one point Inmate Martin spoke with me asking for extra help to make it easier on him.  I told inmate Martin that I would instruct the Table Man and the Diet Cook and one of the inmate workers from the pot sink or dish room area to assist him.

Before [my] taking an extensive sick leave of absence, Inmate Joe Benoit Martin was checked on by me several times during the meal and he did not present any other medical problems to me....

9

*Respondents' Exhibit E (Affidavit of Michael A. Warren) - Court Doc. No. 12-5* at 1-2;
*Respondents' Exhibit B (Affidavit of Leon Bolling) - Court Doc. No. 12-2* at 1 ("[I
responded to a May 22, 2007] inmate request slip from Inmate Joe B. Martin [regarding
a medical problem].... I did deny the inmate's request for a job change. I deny that I told
Inmate Martin that he would never get out of the kitchen and that if he moved one inch his
standing profile time would start over. I talked with the Stewards to insure the "No
prolong Standing" profile was being honored. Inmate Martin was allowed to take breaks
as he felt the need. It is the inmate's responsibility to notify his supervisor when he needs
a break."); *Respondents' Exhibit C (Affidavit of Leon Varner, Jr.) - Court Doc. No. 12-3*
at 1-2 ("[Martin's initial] job description was to serve bread on the end of the serving line
while sitting on a stool.... Inmate Martin never made any complaints to me that he was in
pain due to steam or heat in the kitchen. Inmate Martin asked me on two different
occasions if he could go to his dorm to get his inhaler which I granted him permission to
do so.... Inmate Martin spoke with me asking for extra help [with his assigned duties] to
make it easier on him. I told inmate Martin that I would instruct the Diet Cook and one of
the inmate workers from the dish room area to assist him. Inmate Joe Benoit Martin was
not satisfied with the changes.... Inmate Martin was never denied a break. Inmate Martin
was called into my office [on July 17, 2007] when he was insubordinate when told he
couldn't leave the kitchen until everyone had [performed their assigned duties].... Inmate

Martin never mentioned to me that he wanted to sit and get off his legs.  Inmate Martin was allowed to sit anytime he felt he had stood up too long.  His job assignments allowed for him to sit down while serving and at anytime when [performing other assigned tasks].  Inmate Martin was given a break every time he requested one.").   The remaining defendants likewise deny ever requiring Martin to stand in violation of his medical profile.  *Respondents' Exhibit A (Affidavit of Arnold M. Holt) - Court Doc. No. 12-1* at 1; *Respondents' Exhibit D (Affidavit of Leonardo Moore) - Court Doc. No. 12-4* at 2.

Martin also alleges defendant Moore twice threatened him with bodily harm and that the first threat transpired at the request of defendant Varner.  Defendants Moore and Varner deny these allegations.  *Respondents' Exhibit D (Affidavit of Leonardo Moore) - Court Doc. No. 12-4* at 2; *Respondents' Exhibit C (Affidavit of Leon Varner, Jr.) - Court Doc. No. 12-3* at 2.

1.  <u>Violations of Rules and Regulations</u>.  Martin argues the defendants violated his constitutional rights when they failed to follow the administrative requirements set forth in the rules and regulations of the Alabama Department of Corrections governing the management of inmates with medical profiles.  The alleged circumvention of departmental rules/regulations does not constitute a violation of an inmate's constitutional rights.  *Sandin v. Conner*, 515 U.S. 472 (1995); *Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987).  The defendants are therefore entitled to summary judgment on this claim.

2.  <u>Verbal Threats.</u>   Martin asserts defendant Moore verbally threatened him with bodily harm on two separate occasions and maintains the first threat came at the behest of defendant Varner.  An essential element of a 42 U.S.C. § 1983 action is that the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999); *Parratt v. Taylor*, 451 U.S. 527 (1981).  The statements about which the plaintiff complains, standing alone, do not violate the Constitution.  *Cf. Paul v. Davis*, 424 U.S. 693 (1976).  Threatening, derogatory or abusive comments made by a correctional officer to an inmate do not rise to the level of a constitutional violation.  *Sepulveda v. Burnside*, 170 Fed. Appx. 119, 124 (11th Cir. 2006) (reference to plaintiff "as a 'snitch' in the presence of other inmates" does not rise to the level of a constitutional violation); *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (verbal taunts directed at plaintiff do not violate his constitutional rights); *McFadden v. Lucas*, 713 F.2d 143; 147 (5th Cir. 1983) (threatening demeanor of officers undertaken "to enforce reasonable security needs are not violative of a prisoner's constitutional rights."); *see also Johnson v. Glick*, 481 F.2d 1028 (2nd Cir. 1973).  Thus, the threats about which Martin complains fail to demonstrate that defendants Moore or Varner deprived him of any protected right, privilege or immunity.  Consequently, this claim entitles Martin to no relief.

12

3.  <u>Eighth Amendment Claims</u>.  Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (19891).[4]  "'[T]he Constitution does not mandate comfortable prisons.'  *Id.* at 349, 101 S.Ct. at 2400.  If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'  *Id.* at 347, 101 S.Ct. at 2399.  Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.'  *Id.*"  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  A prison official may likewise be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994).  A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not respond[] reasonably to the risk'...."  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982-1983.

_____

[4]The Eighth Amendment applies to the states through the Fourteenth Amendment.  *Rhodes,* 452 U.S. at 344-345.

13

However, not all pain suffered by an inmate "translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.'  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994).  A plaintiff must also show that the constitutional violation caused his injuries."  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh*, 268 F.3d 1028-1029.  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference....  The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ...  ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***."  *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364

14

(11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have

perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491

(11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due

care for the prisoner's interests or safety....   It is ***obduracy and wantonness, not***

***inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel

and Unusual Punishments Clause, whether that conduct occurs in connection with

establishing conditions of confinement, supplying medical needs, or restoring official

control over a tumultuous cellblock."   *Whitley v. Albers*, 475 U.S. 312, 319 (1986)

(emphasis added).

> To be deliberately indifferent, Defendants must have been
> "subjectively aware of the substantial risk of serious harm in order to have
> had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38,
> 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321,
> 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a
> serious risk of harm and legal causation, the prison official must be aware of
> specific facts from which an inference could be drawn that a substantial risk
> of serious harm exists - and the prison official must also "draw that
> inference."  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury must

be a strong likelihood, rather than a mere possibility before a [correctional official's]

failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533,

1537 (11th Cir. 1990) (citations and internal quotations omitted).  As the foregoing makes

clear, "[m]erely negligent failure to protect an inmate ... does not justify liability under

section 1983...." *Id.*

Pursuant to the aforementioned criteria, Martin is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on a claim arising from alleged deliberate indifference by the defendants. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, a plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029 (same).

Despite his contentions regarding alleged working conditions, Martin does not establish that any actions of the defendants denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347. Furthermore, Martin fails to demonstrate any deliberate indifference or reckless disregard by the named defendants with respect to his health or safety. Specifically, the defendants deny knowledge of any condition from which an inference could be drawn that a substantial risk of serious harm existed to Martin

and there is no evidence before the court which suggests otherwise.  The record is also devoid of any evidence showing that the defendants drew the requisite inference.  *Carter*, 352 F.3d at 1350 (footnote omitted) ("Plaintiff has failed to establish that either Defendant had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim.  When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...").  Consequently, summary judgment is due to be granted in favor of the defendants on Martin's Eighth Amendment claims.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment (Doc. #8) be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before May 26, 2010 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general

objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 12th day of May, 2010.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE